Martin A. SWEENEY and Mildred
B. Sweeney, Plaintiffs,

v.

ST. JOSEPH'S HOSPITAL,
et al., Defendants.

No. 3:CV–89–1637.

United States District Court,
M.D. Pennsylvania.

Aug. 7, 1991.

Peter G. Loftus, Scranton, Pa., for plaintiffs.

James B. Jordan, Danya Armenti George, A. James Johnson, Post & Schell, Philadelphia, Pa., Jonathan Vipond, Buchanan Ingersoll, Harrisburg, Pa., Thomas B. Helbig, Wilkes Barre, Pa., Andrew S. Gordon, Harrisburg, Pa., Christopher Scott D'Angelo, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., Richard G. Fine and Bruce Stephen Zero, Fine & Wyatt, Scranton, Pa., for defendants.

## MEMORANDUM

McCLURE, District Judge.

## I.  BACKGROUND

Plaintiffs commenced this diversity action on November 17, 1989 against numer-

ous defendants. On March 19, 1990 defendants St. Joseph's Hospital; the board of directors of St. Joseph's Hospital; Sister Jean Coughlin, IHM, administrator of St. Joseph's Hospital; the St. Joseph's Foundation; and the board of directors of the St. Joseph's Foundation ("St. Joseph defendants") filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). The other defendants in the action did not join in the motion.[1] By Order dated April 5, 1990, Judge Edwin Kosik granted plaintiffs' motion for an extension of time until April 16, 1990, to file their opposition brief. On April 26, 1990, since no opposition brief had been filed, Judge Kosik granted the St. Joseph defendants' motion to dismiss as unopposed, and on May 7, 1990, Judge Kosik reassigned the case to the undersigned judge. By Order dated July 2, 1990, and after careful consideration, this court vacated Judge Kosik's order of dismissal and granted plaintiffs an extension until July 18, 1990, to file a brief opposing the motion to dismiss. In the background to that order, the court stated: "The court trusts that plaintiffs' counsel has benefitted from this experience. Further lapses will not be tolerated." Plaintiffs filed a brief on July 18, 1991, but found it necessary to file a corrected brief the following day.[2]

On October 26, 1990, this court issued a memorandum and order dismissing the wrongful discharge claim in count one of the complaint, leaving only a breach of contract claim in that count, and granting the plaintiffs leave to amend counts three

through seven in accordance with the court's memorandum within twenty days from the date of the Order.[3]

On November 20, 1991, plaintiffs filed an amended complaint. Unfortunately, plaintiffs totally disregarded the court's order concerning the amendment of their complaint. Plaintiffs proceeded to amend the entire complaint, adding factual allegations and new causes of action, as well as amending counts other than those authorized by the court for amendment.[4] Then, without leave of court, plaintiffs filed a second amended complaint on January 18, 1991, making further unauthorized amendments to the complaint. Specifically, the second amended complaint presents new factual allegations not included in the amended complaint. Plaintiffs did not request, and to this date have not requested, leave of court to file this second amended complaint, as required by Fed.R.Civ.P. 15(a).

On February 11, 1991, the St. Joseph defendants filed a motion to dismiss the first amended complaint. At the time, the St. Joseph defendants were unaware of the second amended complaint because, as the certificate of service indicates, they were not properly served by the plaintiffs. Also on February 11, 1991, defendants Michael Nazarenko and the Commissioners of Susquehanna and Wayne Counties filed a motion to dismiss the second amended complaint. Defendant County Commissioners of Lackawanna County filed a motion to dismiss the second amended complaint on February 14, 1991. On February 28, 1991,

---

1. The other defendants in this case are: Michael Nazarenko, individually and as administrator of the Lackawanna, Susquehanna, Wayne Mental Health/Mental Retardation Program; Northeast Tri–County Mental Health/Mental Retardation Center; the board of directors of the Northeast Tri–County Mental Health/Mental Retardation Center; and the county commissioners of Lackawanna, Susquehanna and Wayne counties.

2. The plaintiffs' thirty-six page opposition brief did not comply with Local Rule 401.8, which requires a table of contents and a table of cases, statutes and other authorities, with page references, for all briefs over fifteen pages in length.

3. The memorandum and order generally required plaintiffs to amend counts three through

seven to specifically relate the required elements of the causes of action asserted to the facts alleged in these counts. Rather than dismiss these counts, the court decided to grant plaintiffs leave to amend them, if possible.

4. Significantly, the object of the conspiracy alleged in the amended complaint is different from that of the conspiracy alleged in the original complaint. The original complaint alleges a conspiracy to seize control of the Northeast Tri-County MH/MR Center in order to gain control of its funding, jobs, goodwill, etc. The amended complaint alleges a conspiracy with the additional goal of intentionally harm the plaintiffs.

the St. Joseph defendants filed a motion to dismiss the second amended complaint, and on March 14, 1991, they filed a motion to strike the second amended complaint.

Plaintiff was granted an extension until April 15, 1991, to file an opposition to the defendants' motions. On April 13, 1991, plaintiff filed a motion for a further extension of time. After considering the opposition briefs filed by several of the defendants, the court denied the request for an extension, and since the plaintiffs failed to file their brief before the expiration of the deadline, all of the defendants' motions were deemed unopposed. Local Rule 401.6.

## II. DISCUSSION

Although throughout this action plaintiffs have constantly been remiss in meeting their filing deadlines, the court has, until recently, granted all of plaintiffs' requests for extensions of time. The court even vacated the order of Judge Kosik dismissing the St. Joseph defendants for plaintiffs' failure to file a timely opposition to a motion to dismiss after an extension had already been granted by Judge Kosik. Plaintiffs, however, have gone beyond simply missing deadlines. They have flagrantly violated the court's order granting leave to amend counts three through seven of their complaint by amending the entire complaint, adding factual allegations and new causes of action, as well as amending counts other than those authorized by the court's order. To use an old cliche, if the court were a camel with a shattered vertebrae, plaintiffs' first amended complaint is the straw which broke it. The filing of the second amended complaint with further unauthorized modifications without seeking leave of the court to amend, as required by Fed.R.Civ.P. 15(a), simply reassures the court that the action it is about to take is clearly justified.

In *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863 (3d Cir.1984), the Third Circuit enumerated the factors to be balanced by a district court in determining whether to dismiss a case for a failure to comply with the district court's orders. The factors include: 1) the extent of the party's personal responsibility, 2) prejudice to the adversary, 3) a history of dilatoriness, 4) whether the attorney's conduct was willful or in bad faith, 5) alternative sanctions, and 6) meritoriousness of the claim or defense. *Id.* at 868.

### 1. *The extent of the party's personal responsibility.*

Although the court has used the term "plaintiffs" when discussing the conduct of this litigation, it is understood that the court has been referring to plaintiffs' counsel. There is no indication that the party plaintiffs were personally responsible for their counsel's delays and failure to comply with the court's order. However, as this memorandum reveals, infra, the lack of plaintiffs' personal responsibility is markedly outweighed by the remaining factors, most notably, the ineffectiveness of alternative sanctions and the lack of meritor to plaintiffs' claim.

### 2. *Prejudice to the Defendants.*

Clearly the defendants have been prejudiced by plaintiffs' unauthorized wholesale modifications to the original complaint. In addition to revising counts other than those specifically authorized by the court, plaintiffs added new factual allegations to the complaint. It is readily apparent that the defendants should not be required to answer new factual allegations one-and-one-half years after the original complaint was filed. Moreover, because of plaintiffs' failure to file a timely opposition to the various motions to dismiss the first amended complaint and second amended complaint, the motions could be granted as unopposed. If plaintiffs were permitted to file an amended complaint in accordance with the court's previous order, the defendants would once again have to file motions to dismiss, and plaintiffs would have another opportunity to oppose these previously unopposed motions. Furthermore, if the St. Joseph defendants were required to file another motion to dismiss, it would be their fourth such motion filed in this case; two of which would have been nullified by the plaintiffs' non-compliance with the court's

order concerning the amendment of the complaint.

### 3. *History of Dilatoriness.*

As recited above, plaintiffs consistent delays have been a prominent feature in this case. Most significantly, at the time this case was reassigned to this court, the St. Joseph defendants had been dismissed due to plaintiffs' failure to file an opposition brief within the period that had been enlarged by the court pursuant to their request.

### 4. *Bad Faith or Wilfulness of the Conduct.*

This court's Order of October 26, 1990 was clear. It specifically granted plaintiffs leave to amend counts three through seven of the complaint "in accordance with the attached memorandum" within twenty days. It did not grant leave to add new factual allegations, new counts, or to amend counts other than counts three through seven. In the memorandum issued with the order, the court expressly indicated what would be required for plaintiff to amend these counts in accordance with the requirements of the law. Nothing in the order or the memorandum expressly or impliedly gave any indication that the court was granting leave to amend the entire complaint.

The filing of the second amended complaint, presenting additional factual allegations, is further evidence of this wilfulness or bad faith. Also, as noted above, the plaintiffs did not request, and have not to this date requested, leave of the court to file the second amended complaint, pursuant to Fed.R.Civ.P. 15(a).

The unauthorized filing of the second amended complaint was, therefore, in violation of the Federal Rules of Civil Procedure. The content of both the first and second amended complaint was in direct contravention of the court's order of October 29, 1990. The court firmly believes that the clarity of that order and the accompanying memorandum left no room for doubt or confusion as to their import.

The ignoring of the rules of court and the clear parameters of the court's order of October 29, 1990 constitute, at a minimum, deliberate indifference of plaintiffs' counsel to the authority of this court and the federal judicial system. His conduct cannot charitably be characterized as "excusable neglect," but rather as "callous disregard" of his professional responsibilities. See *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). Plaintiffs' counsel must be considered as willfully acting in disregard of what he knew to be the rules of procedure and the specific order of this court.

### 5. *Effectiveness of Sanctions other than Dismissal.*

Any sanction other than dismissal is inappropriate because of the resulting prejudice to the defendants. The imposition of an alternative sanction would necessarily permit the plaintiffs the opportunity to file an amended complaint in accordance with the court's previous order, and allow plaintiffs the opportunity to oppose the previously unopposed motions to dismiss. Alternative sanctions such as the imposition of costs or attorney's fees simply would not alleviate the prejudice caused by plaintiffs' actions.

The court is well aware that dismissal is a drastic sanction, and that "[A]lternatives are particularly appropriate when the plaintiff has not personally contributed to the delinquency." *Donnelly v. Johns–Manville Sales Corp.,* 677 F.2d 339, 342 (3d Cir.1982), cited in *Poulis, supra,* 747 F.2d at 866. However, the combination of circumstances in this case does not appear to render any of the possible alternatives as meaningful substitutions.

### 6. *Merit of the claim or defense.*

Although plaintiffs' claims survived the St. Joseph defendants' initial motion to dismiss, a review of this court's memorandum issued on October 26, 1990, will reveal serious inadequacies with these claims which were to be cured, if possible, by the amendments directed by the court. After review-

ing the amended complaint, however, it appears that plaintiffs have failed to cure the defects noted in the court's previous memorandum.[5]

■ More specifically, a count by count review of plaintiffs' first amended complaint[6] reveals that it would not have survived the defendants' motions to dismiss. Although plaintiffs assert a breach of employment contract claim in Count II based on the personnel policy manual, they fail to identify the specific provision in the manual which they allege the defendants to have breached.[7] In addition, they fail to identify "unequivocal provisions" in the manual indicating the employer's intent to be bound by it and renounce the principal of at-will employment. *Reilly v. Stroehmann Bros. Co.*, 367 Pa.Super. 411, 416, 532 A.2d 1212, 1214 (1987), appeal granted, 520 Pa. 577, 549 A.2d 137 (1988); see *Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 216, 511 A.2d 830, 838–39 (1986), appeal denied, 514 Pa. 643, 523 A.2d 1132 (1987) (intent to overcome the at-will presumption in an employee handbook must be stated with sufficient clarity).

Count III alleges that the defendants interfered with plaintiffs' contractual relationship with Northeast. Although plaintiffs do not identify the specific contractual relationship, it appears they are referring to the contract alleged in Count II. There can be no interference with a contract which does not exist.

■ Plaintiffs' invasion of privacy claim asserted in Count IV fails to cure the defects noted in the court's order directing the amendment of this claim. They have failed to identify each defendant's participation in the promulgation of the alleged defamatory articles. *Schaedler v. Reading Eagle Publication, Inc.*, 39 F.R.D. 22, 23 (1965). Furthermore, plaintiffs' defamation claim merely alleges that defendants caused the publication of false and misleading newspaper articles. They do not specifically identify the defamatory statements and a review of the articles identified reveals them to report in neutral terms the issues and concerns surrounding Northeast's affiliation with St. Joseph's Hospital. Plaintiffs' claim of publicity given to private life fails because plaintiffs' allegations bear upon public, not private, matters. *Doe v. Dyer–Good*, 389 Pa.Super. 151, 154–55, 566 A.2d 889, 891 (1989); *Har-*

---

**5.** The following are the circumstances which led to the filing of this suit:

Plaintiff Martin Sweeney incorporated the defendant Northeast Tri–County Mental Health/Mental Retardation Center ("Northeast") in January 1975 and became the administrator of Northeast. Plaintiff Mildred Sweeney was employed by Northeast in June of the same year as director of children's services and chief social worker.

On or about September 23, 1988 plaintiffs were notified that Northeast's contract with the Lackawanna, Susquehanna and Wayne Mental Health/Mental Retardation Program was to be terminated in favor of developing a program with defendant St. Joseph's Hospital. The defendant county commissioners of Lackawanna, Susquehanna and Wayne voted to terminate the program and on or about October 6, 1988 defendant Michael Nazarenko notified Northeast of the termination of the contract.

Nazarenko then notified the president and members of the board of Northeast that all funding would terminate on December 5, 1988 unless Northeast became affiliated with St. Joseph's Hospital. Faced with disruption of services to over 3,600 clients, the board of Northeast reluctantly agreed. Subsequently, the entire board resigned. A new board was appointed by St. Joseph's Hospital and the St. Joseph's Foundation.

At the direction of the St. Joseph's Foundation the new board of Northeast passed a resolution on November 30, 1988 terminating the plaintiffs' employment. Plaintiffs were notified of their termination by letters dated December 1, 1988.

As the complaint unquestionably indicates, plaintiffs Martin and Mildred Sweeney exercised a great deal of control over all aspects of the operations of Northeast, as administrator and chief social worker, respectively. It was this control which provided the new board with sufficient reason to discharge them. If the new board wished to change Northeast, the Sweeneys would be their first and foremost obstacle.

**6.** The court conducted its count by count review of the first amended complaint (record document # 46, filed November 20, 1990), as it is the only authorized amended complaint. However, it appears that the second amended complaint suffers from exactly the same deficiencies as the first.

**7.** The wrongful discharge claim asserted in Count I was dismissed by the court's order of October 26, 1990.

*ris by Harris v. Easton Publishing Co.,* 335 Pa.Super. 141, 153–54, 483 A.2d 1377, 1383–84 (1984).

Likewise, plaintiffs have failed to cure the defects noted by the court in Count V, alleging intentional infliction of emotional distress. The court directed plaintiffs to "amend Count V of the complaint to identify the intentional or reckless outrageous conduct and the perpetrators of such conduct." Instead plaintiffs have substituted hyperbole and conclusions of law for the factual allegations required by the court's order.

Since plaintiff's have failed to allege sufficiently their defamation claim, their claim of conspiracy to commit libel and slander asserted in Count VI similarly fails.

Plaintiffs' claim of interference with potential contractual relationships asserted in count VII fails because they did not plead the existence of a prospective contractual relationship as required by Pennsylvania law and the court's previous order.

Count VIII, which alleges civil conspiracy, fails because plaintiffs have failed to state a cause of action as to any of the substantive counts underlying the alleged conspiracy. Similarly, plaintiffs' remaining claims for loss of consortium and for punitive damages, Counts IX and X respectively, fail because of the insufficiency of the underlying allegations.

Additionally, it appears that most of the defendants would be immune from suit. See 42 Pa.C.S.A. §§ 8332.2 and 8364 [8] (providing qualified immunity for directors of non-profit corporations); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 123 f.n. 34, 104 S.Ct. 900, 920 f.n. 34, 79 L.Ed.2d 67, 93 f.n. 34 (1984) (county commissioners acting within the scope of their authority may be immune under the Eleventh Amendment).

Accordingly, after careful consideration of the foregoing factors, the court shall, sua sponte, dismiss this case with prejudice for plaintiffs' failure to comply with the court's order permitting the amendment of counts three through seven of the complaint.

---

**8.** § 8364 was repealed effective December 19, 1990. See P.L. 834, No. 198, § 306.